UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK JOSEPH GROULX,

    *Plaintiff*,

v.

TAKEDA PHARMACEUTICAL
COMPANY,
BAXTER HEALTHCARE
CORPORATION, and BIOLIFE
PLASMA SERVICES LP,

    *Defendants*.
_____/

Case No. 1:24-cv-12000

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

For the following reasons, I **RECOMMEND** that the Court **DISMISS** Plaintiff's complaint *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2) (2018), and **ENJOIN** Plaintiff from filing any future actions without the Court's leave.

**II.   REPORT**

    **A.   BACKGROUND**

Throughout January and February 2023, Patrick-Joseph Groulx frequently visited a BioLife donation center in Flint Township, Michigan, to donate blood plasma. (ECF No. 1, PageID.4). At each visit, Groulx alleges that the company took

1

up to 897 milliliters of plasma—seventeen milliliters more than he believes to be allowed under FDA regulations. (*See id.* at PageID.5–7, 9, 11–13, 16–17, 20–23).

Groulx suffered no adverse health consequences. (*See id.* at PageID.5–8 (clarifying that Groulx is suing the Defendants for "endangering" his health)). But he alleges that he could have. "Taking too much plasma," according to Groulx, "can lead to a number of problems, including . . . low blood pressure, nausea, and death." (*Id.* at PageID.5). Groulx now sues BioLife and its alleged parent companies for putting his health "at risk" by failing to comply with federal regulations. (*Id.* at PageID.2, 4–5).

After filing his complaint, Groulx moved the Court for leave to proceed *in forma pauperis*. (ECF No. 2). The Undersigned granted his motion (ECF No. 5) and, having reviewed Groulx's allegations, recommends that the Court dismiss his complaint on its own accord.

**B.    LEGAL STANDARD**

Because Groulx proceeds *in forma pauperis*, he subjects his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B). Under § 1915, courts may *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

2

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Still, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Id.*

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

C.     **ANALYSIS**

    1.     **Screening**

Promulgated by the FDA under the Food, Drug, and Cosmetics Act of 1938 ("FDCA"), 21 C.F.R. § 640.65 imposes standards for plasmapheresis, a process

through which plasma is extracted from the blood of human donors. 21 C.F.R. § 640.65(a) (2024); *see* 21 U.S.C. § 371 (2018). Among other aspects of the collection process, the regulation dictates the maximum frequency and volume of plasma donations. 21 C.F.R. § 640.65. It allows no more than two collections from an individual donor in a single week, both of which must be performed at least two days apart. *Id.* § 640.65(b)(4)–(5), (b)(8). And for donors who, like Groulx, weigh more than 175 pounds, each collection can take no more than 600 milliliters of blood "at one time," and no more than 1,200 milliliters of blood in total during a single procedure. *Id.* § 640.65(b)(5)–(6); *see id.* § 640.65(a) (defining any plasmapheresis conducted during a "single visit to the establishment" as one "procedure").

Once removed, the donor's plasma is separated from his or her blood and the "maximum feasible volume of red blood cells" are returned to the donor. *Id.* § 640.65(a), (b)(7). The total "volume of plasma" that may be separated from the donor's blood is determined by "the Director" of the "Center for Biologics Evaluation and Research." *Id.* § 640.65(b)(8).

According to Groulx, the Director caps the collection of plasma at 880 milliliters per procedure. (ECF No. 1, PageID.4, 29, 31). And BioLife, he contends, surpassed this limit by consistently taking between 884 milliliters and 897 milliliters of blood during each procedure. But even if that is true, Groulx fails to state a plausible claim for relief. (*Id.* at PageID.11–13, 16–17, 20–23). Groulx alleges that

4

the Defendants' "noncompliance" with § 640.65 entitles him to relief. (*Id.* at PageID.6–7). But individuals cannot enforce the FDCA or its corresponding regulations through private, civil actions. *Bailey v. Johnson*, 48 F.3d 965, 966–68 (6th Cir. 1995); *accord Schering–Plough Healthcare Prods. v. Schwarz Pharma., Inc.*, 586 F.3d 500, 509 (7th Cir. 2009); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 376–77 & n.35 (S.D.N.Y. 2014).

Although Groulx appears to center his right to relief in the FDCA itself, his complaint contains language suggesting that he might also intend to bring a state-law negligence claim against the Defendants under this Court's diversity jurisdiction. (*See, e.g.*, ECF No. 1, PageID.2, 6–7 (invoking the Court's diversity jurisdiction and accusing the Defendants of 'negligently" "breach[ing]" a "duty" owed to Groulx). Yet if Groulx does intend to bring a garden-variety negligence claim, he lacks standing to do so. The Constitution only grants federal courts the power to decide "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. That is, courts can only decide "actual, ongoing" disputes between parties. *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014). This requirement, known as standing, requires a claimant to "have suffered an injury-in-fact that is fairly traceable to the defendant's conduct and would likely be redressed by a favorable decision from a court." *Bouyce v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023) (citing *Rice v. Vill. of Johnstown*, 30 F.4th 584, 591 (6th Cir. 2022)).

5

But Groulx does not allege to have incurred an injury-in-fact. An injury-in-fact is one that is both "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To the extent Groulx's claimed "injuries" are the several maladies that could result from excessive plasma collection, these injuries are neither actual nor imminent. (*See* ECF No. 1, PageID.5). Fluker does not allege to have actually experienced any of these conditions, and he does not describe any plans to visit a BioLife facility in the future. (*Id.*)

Insofar as Fluker maintains that simply being put at "risk" of illness was itself an injury, this is not sufficiently "concrete" to constitute an injury-in-fact. (*See id.*) A "concrete" injury is one that is "real, not abstract." *Spokeo Inc. v. Robins*, 578 U.S. 330, 352 (2016) (Ginsburg, J., dissenting); *see also id.* at 340. It is an injury that "actually exist[s]," though not necessarily one that is "tangible." *Id.* at 340. But Fluker does not allege any interference with a "real," intangible interest. He does not, allege anything analogous to, for instance, an emotional injury, a reputational harm, or an invasion of his privacy. *See id.*; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In fact, Groulx does not even allege a bare "legal infraction[]," as Michigan does not recognize a cause of action for breaches of duty without any resulting injury. *Ramirez*, 594 U.S. at 427 (internal quotation marks omitted) (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th

6

Cir. 2019)); *Slucter v. Griffith*, No. 180920, 1996 WL 33362255, at *1–2 (Mich. Ct. App. July 26, 1996).

At bottom, "[t]he risk of a past injury that never materialized simply does not constitute" an injury-in-fact. *Looney v. Moore*, No. 2:13-cv-00733, 2015 WL 4773747, at *6 (N.D. Ala. Aug. 13, 2015); *see also Atkins v. KAI USA, Ltd.*, No. SA-09-CA-14-FB, 2010 WL 11506524, at *5 (W.D. Tex. June 16, 2010). So, to the extent Groulx may have intended to bring a negligence claim against the defendants, the Court lacks subject matter jurisdiction because Groulx does not plausibly allege to have standing. *State by & through Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019).

### 2. Injunction

The Court "undoubtedly possesses the discretion to enjoin [parties] from filing lawsuits without leave of the court." *Scott v. Burress*, No. 10-14937, 2012 WL 1068704, at *7 (E.D. Mich. Mar. 29, 2012); *see also Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480, at *3 (6th Cir. 1995); E.D. Mich. L.R. 5.2. Indeed, courts have the "constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984). So, although a plaintiff cannot be "absolutely foreclosed from initiating an action in a court of the United States," the "right of access to the courts is neither absolute nor unconditional." *Tripati v.*

7

*Beaman*, 878 F.2d 351, 353 (10th Cir. 1989); *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996).

An injunction is proper "where the litigant's abusive and lengthy history is properly set forth." *Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013) (quoting *Tripati*, 878 F.2d at 353); *see also De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990) (noting that both the amount and content of filings are relevant to this inquiry). Legitimate claims deserve a full and fair hearing, but repeated litigation that abuses the judicial process must be curtailed. "The proper method for handling the complaints of prolific litigators" is to require them to seek leave of the court before filing further complaints. *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987); *see also Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) (noting that there is "nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation").

In 2019, Groulx filed a case in state court against a company he accused of negligently spraying an herbicide on a farm neighboring his home. (*Groulx v. Crop Production Servs.*, No. 1:19-cv-12560, ECF No. 1-1 (E.D. Mich. filed August 30, 2019)). Groulx alleged that he inhaled the herbicide after it drifted onto his property and that he later experienced headaches, breathing difficulties, and erectile disfunction. (*Id.*) The matter was removed to this Court, and the Court later entered summary judgment against Groulx. (ECF No. 1; ECF No. 81).

8

Yet this was only the beginning of Groulx's crusade. Between 2019 and 2022, Groulx filed five more cases regarding the neighboring farm's use of herbicides.[1] And during this time, he brought three other unrelated actions concerning trivial and odd disputes.[2] For instance, he sued the social media platform, Tik Tok, for deleting an account on which he posted videos demonstrating "how to grow marijuana." (*Groulx v. People's Republic of China*, 1:22-cv-12295, ECF No. 1, PageID.3 (E.D. Mich. Sept. 27, 2022). In another case, Groulx sued his municipality for mowing a ditch on his property that he believed to contain endangered plants and insects. (*Groulx v. Saginaw Cnty. Road Comm'n*, 1:22-cv-12049, ECF No. 1, PageID.2–3 (E.D. Mich. Aug. 29, 2022)).

Each of these seven complaints are difficult to follow, riddled with bizarre statements, and smacking of paranoid delusions. Not surprisingly, they have all been dismissed on the Court's own motion for lack or jurisdiction or Groulx's failure to state a claim.[3] Despite this, Groulx still continues to inundate the Court with strange,

---

[1] (*Groulx v. Zawadski*, 1:22-cv-12294 (E.D. Mich. filed Sept. 27, 2022); *Groulx v. Dollar General Corp., Inc.*, No.. 1:22-cv-12050 (E.D. Mich. filed Aug. 29, 2022); *Groulx v. Dollar General Corp., Inc.*, 1:22-cv-12049 (E.D. Mich. filed August 29, 2022); *Groulx v. People's Republic of China (PRC)*, No. 1:22-cv-11369 (E.D. Mich. filed June 21, 2022); *Groulx v. Dollar General Corp.*, 1:21-cv-10811 (E.D. Mich. Mar. 29, 2021)).
[2] *Groulx v. CSX Transp.*, 1:22-cv-12296 (E.D. Mich. filed Sept. 27, 2022); *Groulx v. People's Republic of China*, 1:22-cv-12295, (E.D. Mich. Sept. 27, 2022); *Groulx v. Saginaw Cnty. Road Comm'n*, 1:22-cv-12049 (E.D. Mich. Aug. 29, 2022).
[3] That is with the exception of *Groulx v. CSX Transp.*, which was dismissed for Groulx' failure to prosecute. (*Groulx v. CSX Transp.*, 1:22-cv-12296, ECF No. 12 (E.D. Mich. filed Sept. 27, 2022)).

9

frivolous complaints. Indeed, following a brief hiatus from his litigious endeavors, Groulx returned to the Court this summer to file eight more complaints between July and August.[4] Like his prior actions, these new complaints are frivolous and draw the court's attention from other plaintiffs with legitimate disputes.

Thus, I suggest that the Court enjoin and restrain Groulx from filing any new lawsuit in the United States District Court for the Eastern District of Michigan, or from filing a motion in any previously dismissed matter in this District, without first making a written request for, and receiving a court order from the Presiding Judge authorizing, the filing of such lawsuit or motion. The Court should instruct the Clerk's Office to assign a miscellaneous case number to any new lawsuit before submitting it to the Presiding Judge. Any request for leave should be required to include a concise explanation of the facts and legal basis for Groulx's proposed lawsuit or motion. The request should limited to a single page, with no attachments, and it should be typewritten in fourteen-point, Times New Roman font. If Groulx fails to comply with the Court's order, the filing should be stricken.

---

[4] *Doe v. Groulx*, 1:24-cv-12129 (E.D. Mich. filed Aug. 14, 2024); *Groulx v. Takeda Pharmaceutical Company*, 1:24-cv-12000 (E.D. Mich. filed July 30, 2024); *Groulx v. Master*, 1:24-cv-11997 (E.D. Mich. filed July 30, 2024); *Groulx v. CSL Limited*, 1:24-cv-11996 (E.D. Mich. filed July 30, 2024); *Groulx v. Covenant Med. Ctr., Inc.*, 1:24-cv-11989 (E.D. Mich. filed July 30, 2024); *Groulx v. Janssen Pharmaceuticals*, 1:24-cv-11960 (E.D. Mich. filed July 22, 2024); *Groulx v. Mobile Med. Response, Inc.*, 1:24-cv-11953 (E.D. Mich. July 22, 2024); *Groulx v. China Nat. Chem. Co.*, 1:24-cv-11760 (E.D. Mich. July 8, 2024).

### III.   CONCLUSION

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint and **ENJOIN** him from filing complaints without the Court's permission.

### IV.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

11

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 21, 2024                              S/PATRICIA T. MORRIS
                                                    Patricia T. Morris
                                                    United States Magistrate Judge